IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ANGELA CLEMENTE,<br><br>*Plaintiff,*<br><br>v.<br><br>FEDERAL BUREAU OF INVESTIGATION, *et al.*,<br><br>*Defendants.* | No. 1:08-cv-01252 BJR<br><br>ORDER GRANTING RENEWED MOTIONS FOR SUMMARY JUDGMENT IN PART AND DENYING THE REMAINDER WITHOUT PREJUDICE |

Angela Clemente brings this suit under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, against the Federal Bureau of Investigation, a component of the U.S. Department of Justice, and other unnamed agencies (collectively, "the FBI"). Before the Court are defendants' renewed motion for summary judgment [Dkt. # 51] and plaintiff's renewed cross-motion for summary judgment [Dkt. # 57]. For the reasons set forth below, the Court grants the FBI's motion in part and denies the remainder and Ms. Clemente's motion without prejudice.

ORDER-1

## I. BACKGROUND

The facts underlying this case, described at greater length in an earlier opinion, *see Clemente v. F.B.I.*, 741 F. Supp. 2d 64 (D.D.C. 2010), are recited briefly as relevant here.

Angela Clemente has spent many years researching the late Gregory Scarpa, Sr., a high-ranking Mafia member who served as an FBI informant. *Id.* at 71. The relationship between Mr. Scarpa, his FBI handler, and the commission of several violent crimes has been the subject of considerable reporting, *see, e.g.*, Fredric Dannen, *The G–Man and the Hit Man*, NEW YORKER, Dec. 16, 1996; John Connolly, *Who Handled Who?*, NEW YORK, Dec. 2, 1996, at 46, and at least one prosecution, *see People v. DeVecchio*, N.Y. Misc. LEXIS 7827 (N.Y. Sup. Ct. Nov. 1, 2007).

In April 2008, Ms. Clemente sent a letter to the records division of FBI headquarters requesting Mr. Scarpa's unredacted FBI file. *Clemente*, 741 F. Supp. 2d at 71. She sent another copy of the letter that May. *Id.* In June, the FBI confirmed that it had received both of Ms. Clemente's letters and was processing them as FOIA requests. *Id.* In July, Ms. Clemente's counsel informed the FBI by certified mail that Ms. Clemente wanted to "clarify her request" for documents, which was "directed to any informant file on Mr. Scarpa, including in particular any Top Echelon ('TE') Informant File." *Id.* (quoting 2d Am. Compl., Ex. 4 at 1). Counsel further requested that the documents be placed in a particular order, that Ms. Clemente be sent copies of only the first 500 pages of responsive documents, and that she be granted a waiver of the copying and processing fees. *Id.* at 71–72.

ORDER-2

Ms. Clemente says that, on the same date in July, her counsel sent a second letter to the FBI requesting "all records on or pertaining to Gregory Scarpa wherever they may be located or filed in whatever form or format they are maintained." *Id.* (quoting 2d Am. Compl., Ex. 9 at 1). This second letter did not request that the records be placed in any particular order, nor did it request that Ms. Clemente be sent only 500 pages of responsive documents. *Id.*

Ms. Clemente filed this action on July 21, 2008. In October of that year, David M. Hardy of the FBI's records management division informed Ms. Clemente that the agency had located approximately 1,170 pages of documents potentially responsive to her request, and that her application for a fee waiver had been denied. *Id.* Ms. Clemente sent the FBI a check to cover the duplication fees for all of those documents and appealed the denial of a fee waiver. *Id.*

That November, the FBI released 500 pages of documents to Ms. Clemente and filed a motion for summary judgment, attaching an affidavit that classified the redactions made from all 500 pages. *Id.* at 73; Declaration of David M. Hardy (attached to Defs.' Mot. for Summ. J.) ("1st Hardy Decl."). In March 2009, the FBI released 653 additional pages of records. *Clemente*, 741 F. Supp. 2d at 73. Ms. Clemente filed a cross-motion for summary judgment. *Id.* Defendants filed a supplemental motion for summary judgment several months later, including an affidavit classifying the redactions made from a 55-page sample of the additional pages, which had been selected by Ms. Clemente. Second Declaration of David M. Hardy (attached to Defs.' Supplemental Mot. for Summ. J.) ("2d Hardy Decl."), at ¶ 4.

ORDER-3

On September 28, 2010, U.S. District Court Judge Paul L. Friedman ruled on those motions. Judge Friedman found that Ms. Clemente was entitled to a waiver of the fees associated with the search for and duplication of the records she requested. *Clemente*, 741 F. Supp. 2d at 74–77 (granting fee waiver under 5 U.S.C. § 552(a)(4)(A)(iii)). He also found that the FBI had conducted an adequate search for documents responsive to Ms. Clemente's FOIA request. First, Judge Friedman ruled that the FBI was not required to comply with the requests contained in Ms. Clemente's second July 2008 letter, because the FBI had submitted a sworn statement that it had never received the letter and Ms. Clemente had produced no evidence to the contrary. *Id.* at 78. Although Ms. Clemente presented the second letter in litigation, she was required to exhaust her administrative remedies before seeking relief in court. *Id.* at 78–79. Next, Judge Friedman determined that Ms. Clemente's request for "any informant file on Mr. Scarpa" could reasonably be read as limited to informant files whose primary subject was Mr. Scarpa, and that the FBI had conducted a search that was reasonably designed to locate such files. *Id.* at 79. Finally, Judge Friedman ruled that the FBI was not required to search for files in its New York field office, nor in any system beyond its Central Records System. *Id.* at 78–79. The FBI could limit its search to its headquarters because the request was only submitted to that location, *id.* at 80 (citing 28 C.F.R. §§ 16.3, 16.41; *Fischer v. U.S. Dep't of Justice*, 596 F. Supp. 2d 34, 43 n.9 (D.D.C. 2009)), and could search only its Central Records System because it had not received a request to search any further, *id.* at 78, and, implicitly, because such a search was "reasonably calculated to recover all relevant documents," *id.* at 77 (quoting *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting *Truitt v. Dep't of State*, 897 F.2d 540, 542

ORDER-4

(D.C. Cir. 1990))). Judge Friedman further ruled that the FBI was not obligated to release the documents underlying two "placeholder" pages, because one set of documents was housed in the New York field office, where the FBI was not required to search for files, and the other referred only to a document that had been mis-indexed and therefore was not a part of Mr. Scarpa's informant file. *Id.* at 79–80. Judge Friedman proceeded to address the FBI's justifications for the redactions it had made from the documents that it released to Ms. Clemente.

Judge Friedman first reviewed the redactions made pursuant to FOIA Exemption 2, which applies to information "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). Under the then-current law of this circuit, information was covered by Exemption 2 if it was "used for predominantly internal purposes," *Crooker v. Bureau of Alcohol Tobacco & Firearms*, 670 F.2d 1051, 1073 (D.C. Cir. 1981) (en banc), and either its "disclosure [might] risk circumvention of agency regulation" or it "relate[d] to trivial administrative matters of no genuine public interest," *Schwaner v. Dep't of Air Force*, 898 F.2d 793, 794 (D.C. Cir. 1990) (internal quotation marks and citations omitted). Judge Friedman ruled that (1) FBI informant codes and the files numbers associated with those codes were properly withheld under Exemption 2 because "[t]he means by which the FBI refers to informants in its investigative files is a matter of internal significance in which the public has no substantial interest," *Clemente*, 741 F. Supp. 2d at 82 (quoting *Lesar v. Dep't of Justice*, 636 F.2d 472, 486 (D.C. Cir. 1980)) (brackets in *Clemente*); that (2) the FBI could not withhold references to the number of FBI informants reporting on Mafia issues if those references were of "only historical significance," *id.* at 82–83; that (3) the FBI could not

ORDER-5

withhold references to the dispensation of "operational funds," *id.* at 83; and that (4) the *Vaughn* index submitted by the FBI "provided the Court with no means by which it can determine whether the information withheld [on the grounds that it] relates to techniques whose disclosure could result in evasion of the law," actually presented that risk, *id.*

Judge Friedman went on to examine the redactions made under FOIA Exemption 7, which protects "records or information compiled for law enforcement purposes," the disclosure of which would cause an enumerated harm. *See* 5 U.S.C. § 552(b)(7). Judge Friedman concluded that because "the records in Mr. Scarpa's file 'pertain to the investigation of the activities of subject's involvement as a [Top Echelon] informant for the FBI and his involvement in [La Cosa Nostra],'" *Clemente*, 741 F. Supp. 2d at 84 (quoting 1st Hardy Decl. ¶ 40), they were "compiled for law enforcement purposes" within the meaning of FOIA. He then considered whether the FBI had demonstrated that disclosure would cause one of the harms against which Exemption 7 protects. Judge Friedman concluded that the agency's declarations were insufficiently detailed to allow the court to determine whether certain redacted information "could reasonably be expected to constitute an unwarranted invasion of personal privacy," 5 U.S.C. § 552(b)(7)(C). *Clemente*, 741 F. Supp. 2d at 86. He ordered that "[i]n each instance in which it is not clear from context that information redacted as subject to Exemption 7(C) reveals a name or other basic identifying information, such as an address—and particularly where a substantial amount of text has been redacted—the FBI must [provide] individualized and more detailed descriptions of the information not disclosed." *Id.* As to Exemption 7(D), which protects confidential sources and the information that they provide, Judge Friedman approved the withholding of the source codes that

ORDER-6

identified confidential informants, as well as the identities of informants to whom no source code was assigned. *Id.* at 87. Finally, Judge Friedman found that the FBI could not "rely upon the vaguely worded categorical description it has provided," *id.* at 88, to justify the withholding of "information describing 'techniques and procedures used in law enforcement investigations regarding the handling of confidential informants,'" *id.* (quoting 1st Hardy Decl. ¶ 66), under Exemption 7(E). Rather, he ruled, the FBI "must provide evidence from which the Court can deduce something of the nature of the techniques in question," *id.*, before the Court could conclude that "such disclosure could reasonably be expected to risk circumvention of the law," 5 U.S.C. § 552(b)(7)(E). Judge Friedman also ruled that under Exemption 7(E), as under Exemption 2, the FBI could withhold references to the number of FBI informants currently reporting to the FBI on Mafia issues, but not "[r]eferences to the number of informants operative in the 1960s." *Clemente*, 741 F. Supp. 2d at 88. He did not address whether the symbol and file numbers of confidential sources could be withheld under Exemption 7(D), because he had already ruled that those categories of information were properly withheld under Exemption 2. *Id.* at 87.

Judge Friedman granted summary judgment to Ms. Clemente on the issue of the fee waiver, and denied without prejudice the parties' motions for summary judgment on the remaining questions. He directed the FBI to supplement its *Vaughn* index and instructed the parties that if they could "agree on a representative sample of documents

ORDER-7

for which the FBI will produce a more detailed *Vaughn* index, they should do so." *Id.* at 89.[1]

The parties agreed that the FBI would produce a new *Vaughn* index of a representative sample of documents selected by plaintiff, who submitted a list of approximately 192 pages for this purpose. Fourth Declaration of David M. Hardy (attached to Defs.' Renewed Mot. For Summ. J.) ("4th Hardy Decl."), at ¶ 9. The FBI reprocessed this sample of pages, releasing some information that it had previously withheld and changing its justifications for some redactions that it maintained. In accordance with Judge Friedman's decision, the agency released the amounts of money paid to informants, which had been redacted from 51 of the 192 sample pages, *id.* ¶ 11 n.2, and historical information regarding the number of informants reporting on Mafia issues, which had been redacted from 11 pages, *id.* ¶ 11 n.3. (All 11 of those pages had also contained redactions of the sums paid to informants. *Compare id.* ¶ 11 n.2 *with id.* ¶ 11 n.3.) The FBI also made what it describes as "additional discretionary releases" of information previously redacted from 26 pages. *Id.* ¶ 10.

After defendants filed their renewed motion for summary judgment and plaintiff filed her renewed cross motion, the case was reassigned to this district judge.

## II. LEGAL STANDARDS

### a. The Freedom of Information Act

FOIA was enacted so that citizens could discover "what their government is up to." *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989). "The basic purpose of FOIA is to ensure an informed citizenry, vital to the

---

[1] A *Vaughn* index is simply a declaration or affidavit submitted in a FOIA case, so called after the case of *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973).

ORDER-8

functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). FOIA therefore "seeks to permit access to official information long shielded unnecessarily from public view and attempts to create a judicially enforceable public right to secure such information from possibly unwilling official hands." *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976) (quoting *EPA v. Mink*, 410 U.S. 73, 80 (1973)). FOIA "is broadly conceived," *Mink*, 410 U.S. at 80, and its "dominant objective" is "disclosure, not secrecy," *U.S. Dep't of Def. v. FLRA*, 510 U.S. 487, 494 (1994) (quoting *Rose*, 425 U.S. at 361).

An agency may withhold information responsive to a FOIA request only if the information falls within an enumerated statutory exemption. 5 U.S.C. § 552(b). These "exemptions are 'explicitly exclusive,'" *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 151 (1989) (quoting *FAA Administrator v. Robertson*, 422 U.S. 255, 262 (1975)), and "have been consistently given a narrow compass," *id.* "The agency bears the burden of justifying any withholding, and the Court reviews the agency claims of exemption *de novo*." *See Bigwood v. U.S. Agency for Int'l Dev.*, 484 F. Supp. 2d 68, 74 (D.D.C. 2007) (citing 5 U.S.C. § 552(a)(4)(B)). Because the focus of FOIA is "information, not documents . . . an agency cannot justify withholding an entire document simply by showing that it contains some exempt material." *Krikorian v. Dep't of State*, 984 F.2d 461, 467 (D.C. Cir. 1993) (citation and internal quotation marks omitted). Instead, FOIA requires that federal agencies provide to a requester all non-exempt information that is "reasonably segregable" from, 5 U.S.C. § 552(b)—that is, not "inextricably intertwined

ORDER-9

with," *Mead Data Central, Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977) (citations and internal quotation marks omitted)—exempt information.

### b. Summary Judgment

FOIA cases are typically and appropriately decided on motions for summary judgment. *Miscavige v.* IRS, 2 F.3d 366, 368 (11th Cir. 1993); *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009); *Rushford v. Civiletti*, 485 F. Supp. 477, 481 n.13 (D.D.C. 1980). A motion for summary judgment should be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant must support its factual positions by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c)(1)(A); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Factual assertions in the moving party's affidavits or declarations may be accepted as true unless the opposing party submits its own affidavits, declarations, or documentary evidence to the contrary. *Neal v. Kelly*, 963 F.2d 453, 456 (D.C. Cir. 1992).

In a FOIA case, an agency is entitled to summary judgment if it can demonstrate that there are no material facts in dispute as to the adequacy of its search for or production of responsive records. *Nat'l Whistleblower Ctr. v. U.S. Dep't of Health & Human Servs.*, 2012 WL 1026725, at *4 (D.D.C. Mar. 28, 2012). An agency must show that any responsive information it has withheld was either exempt from disclosure under

ORDER-10

one of the exemptions enumerated in 5 U.S.C. § 552(b), or else "inextricably intertwined with" exempt information, *Mead Data*, 566 F.2d at 260 (citations and internal quotation marks omitted). "Because FOIA challenges necessarily involve situations in which one party (the government) has sole access to the relevant information, and that same party bears the burden of justifying its disclosure decisions, the courts . . . require the government to provide as detailed a description as possible—without, of course, disclosing the privileged material itself—of the material it refuses to disclose." *Oglesby v. U.S. Dep't of Army*, 79 F.3d 1172, 1178 (D.C. Cir. 1996). This justification is typically contained in a declaration or affidavit, referred to as a *Vaughn* index after the case of *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973). An agency's affidavits or declarations are presumed to be submitted in good faith. *See SafeCard Servs., Inc. v. S.E.C.*, 926 F.2d 1197, 1200 (D.C. Cir. 1991).

There is no set formula for a *Vaughn* index, because "the critical elements of the *Vaughn* index lie in its function, and not in its form." *Kay v. FCC*, 976 F. Supp. 23, 35 (D.D.C. 1997). The purpose of a *Vaughn* index is "to permit adequate adversary testing of the agency's claimed right to an exemption," *Nat'l Treasury Emps. Union v. U.S. Customs Service*, 802 F.2d 525, 527 (D.C. Cir. 1986) (*citing Mead Data Central,* 566 F.2d at 251), and so the index must contain "an adequate description of the records" and "a plain statement of the exemptions relied upon to withhold each record," *Nat'l Treasury Emps. Union*, *id.* at 527 n.9.

### III. ANALYSIS

The FBI asserts that it has disclosed all responsive, non-exempt information to Ms. Clemente, and that, as such, it is entitled to judgment as a matter of law. First, it

ORDER-11

contends that its search for responsive documents was reasonable. Second, the Bureau argues that it has only withheld information pursuant to an applicable FOIA exemption, and that all segregable, non-exempt information has been released. The FBI asks the Court to grant summary judgment in its favor.

Ms. Clemente, however, contends that the FBI's search for documents responsive to her FOIA request was inadequate, and that it has not met the burden of proof on its exemption claims. She therefore asks the Court to order the Bureau to reprocess the entire set of responsive documents. The Court addresses each of these arguments in turn.

### a. Adequacy of the FBI's Search for Responsive Documents

Ms. Clemente first argues that the FBI has not conducted an adequate search for responsive documents. She presses the Court to reconsider Judge Friedman's ruling—which he affirmed in denying her motion for reconsideration—that the FBI was not required to search its New York field office. Ms. Clemente challenges the reliance on *Fischer v. U.S. Dep't of Justice*, 596 F. Supp. 2d 34 (D.D.C. 2009), and refers the Court instead to *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20 (D.C. Cir. 1998). But, as Judge Friedman held in denying her motion for reconsideration [Dkt. # 61], "[n]othing in *Campbell* suggests that the Court reached the wrong result on the adequacy-of-search issue." *Campbell* concerned a request submitted to an FBI field office in 1988; after an exchange of correspondence, the FBI produced documents from both its field and national offices. 164 F.3d at 26. To locate those records, the FBI searched its Central Records System index, but did not search either a separate electronic surveillance index nor for duplicate "tickler" files. The *Campbell* court ruled that the FBI was required to conduct those searches because in searching its Central Records System the Bureau had

ORDER-12

discovered information suggesting that such searches would be fruitful. *Id.* at 28–29. *Campbell* did not address the question of whether the FBI would have been required to search its New York office if the FOIA request had not been submitted there. Nor did the case concern a request brought under the current regulations which, as discussed below, require requests for documents held at FBI field offices to be submitted to those offices.

Subject to exceptions not relevant here, FOIA requests must be made "in accordance with an agency's 'published rules stating the time, place, fees (if any), and procedures to be followed. . . .'" *Fischer*, 596 F. Supp. 2d at 43 n.9 (quoting 5 U.S.C. § 552(a)(3)(A)). Since 1998, the regulations governing requests for FBI files have required that persons seeking "records held by a field office of the Federal Bureau of Investigation (FBI) . . . must write directly to that FBI . . . field office address." 28 C.F.R. § 16.3(a) (2012) (language first introduced by Revision of Freedom of Information Act and Privacy Act Regulations, 63 Fed. Reg. 29,591, 25,594 (June 1, 1998)). This requirement has been recognized by the D.C. Circuit. *Negley v. FBI*, 169 Fed. Appx. 591, 592 (D.C. Cir. 2006) (per curiam); *Piccolo v. Exec. Office for U.S. Attorneys*, 93 Fed. Appx. 235, 236 (D.C. Cir. 2004) (per curiam) ("Appellant next argues that the court should not have granted summary judgment for the FBI concerning the adequacy of the search because the Bureau searched only its headquarters, not its field offices. The scope of the search was appropriate, however, under 28 C.F.R. []§ 16.3(a) . . . ."). Judges in this district have repeatedly invoked it in rejecting the argument that Ms. Clemente makes here. *See, e.g.*, *Wiesner v. FBI*, 668 F. Supp. 2d 157, 161 (D.D.C. 2009); *Servicemembers Legal Def. Network v. U.S. Dep't of Def.*, 471 F. Supp. 2d 78, 85 (D.D.C. 2007); *Ray v. FBI*, 441 F.

Supp. 2d 27, 32 (D.D.C. 2006); *Hidalgo v. FBI*, 2005 WL 6133690, at *1 n.2 (D.D.C. Sept. 29, 2005); *Maydak v. U.S. Dep't of Justice*, 254 F. Supp. 2d 23, 44 (D.D.C. 2003).

Ms. Clemente is of course free to submit a request to the FBI's New York office, but that office was not required to respond to the request at issue here. The Court grants summary judgment in favor of the FBI on the adequacy-of-search issue and moves on to consider the adequacy of the agency's production.

### b. Need for Reprocessing of Documents

Ms. Clemente goes on to argue that the FBI has withheld information that is neither exempt from disclosure under 5 U.S.C. § 552(b) nor "inextricably intertwined with exempt portions." *Mead*, 566 F.2d at 260 (citations and internal quotation marks omitted). In support of its renewed motion for summary judgment, the FBI has submitted a *Vaughn* index describing the redactions made from a sample of the responsive documents it has identified—192 pages out of a total of 1,153.

"Representative sampling is an appropriate procedure to test an agency's FOIA exemption claims when a large number of documents are involved." *Bonner v. U.S. Dep't of State*, 928 F.2d 1148, 1151 (D.C. Cir. 1991); *see also Meeropol v. Meese*, 790 F.2d 942, 958 (D.C. Cir. 1986); *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1490 (D.C. Cir. 1984). "Representative sampling allows the court and the parties to reduce a voluminous FOIA exemption case to a manageable number of items that can be evaluated individually through a *Vaughn* index or *in camera* inspection. If the sample is well-chosen, a court can, with some confidence, 'extrapolate its conclusions from the representative sample to the larger group of withheld materials.'" *Bonner*, 928 F.2d at

ORDER-14

1151 (D.C. Cir. 1991) (quoting *Fensterwald v. CIA*, 443 F. Supp. 667, 669 (D.D.C. 1977)).

When presented with a representative sample, a court considers the documents produced or described with the understanding that "[t]hey count not simply for themselves, but for presumably similar non-sample documents." *Id.* at 1152. An agency's admission that information was improperly redacted from documents in the representative sample may suggest that similar redacting errors could be found in the non-sample documents. *See id.* at 1152–54; *Meeropol*, 790 F.2d at 959–60. If, however, the court reviewing the sample "uncovers no excisions or withholding improper *when made*, then the agency's action ordinarily should be upheld." *Bonner*, 928 F.2d at 1153 (emphasis added). Neither "[t]he fact that some documents in a sample set become releasable with the passage of time," *Bonner*, 928 F.2d at 1153, nor "[t]he fact that there are documents which while properly withheld at the time the decision to withhold was made were nevertheless not exempt under *new* standards" indicates any error on the part of the agency, *Meeropol*, 790 F.2d at 959. *See also Bonner*, 928 F.2d at 1152 ("To require an agency to adjust or modify its FOIA responses based on post-response occurrences could create an endless cycle of judicially mandated reprocessing."). The Court therefore examines the *Vaughn* index of the representative sample in order to determine whether it suggests that the entire set of responsive documents was properly processed under the legal standards applicable at the time of the processing.

Judge Friedman's order held that the FBI could not withhold references to the number of FBI informants reporting on Mafia issues if those references were of "only historical significance," *Clemente*, 741 F. Supp. 2d at 82–83, nor references to the

ORDER-15

dispensation of "operational funds," *id.* at 83. This holding applied to the entire set of responsive documents, but the FBI only released that information from the sample documents that it reprocessed. After reprocessing those documents, the FBI released the sums dispensed as operational funds during law enforcement investigations from fifty-one documents in the sample. 4th Hardy Decl. ¶ 11 n.2. The Bureau released references to the number of informants reporting on Mafia issues from eleven sample documents. 4th Hardy Decl. ¶ 11 n.3. It has not released any information from non-sample documents.

The FBI made twenty-six additional disclosures from twenty-three documents in the representative sample. It describes these disclosures as "discretionary releases." 4th Hardy Decl. ¶ 10. The "discretionary" disclosures included the names of fifteen deceased individuals contained in twenty-one documents, as well as the names of Scarpa's wife and eldest son, which the FBI determined to be part of the public record, a "technical source symbol number," "information regarding [an] informant's position within [the] organization and the resulting information provided by the informant," each of which was released from one sample document, and "identifying information regarding [a] payment pick-up location," which was released from two. *Id.* Although the FBI does not explicitly concede that these documents were improperly withheld, it describes the releases as having been made "in response to this Court's Memorandum Opinion of September 28, 2010," Defs.' Reply Br. [Dkt. # 63] at 2.

Ms. Clemente argues that these excisions were "improper when made," *Bonner*, 928 F.2d at 1153, and that similar errors would therefore likely be found if the redactions made from the the non-sample documents were re-examined. Her argument is

ORDER-16

persuasive. Redactions were removed in explicit response to Judge Friedman's order from 26.5% of the sample documents. The D.C. Circuit has said that an error rate of even 25% is "unacceptably high." *Meeropol*, 790 F.2d at 960.

There is no merit to the FBI's argument that Judge Friedman's decision in this case was the sort of "post-response occurrence" that should not trigger "judicially mandated reprocessing." *Bonner*, 928 F.2d at 1152. The crucial question is whether the redactions were proper under the standards applicable at the time those redactions were made. *See Bonner*, 928 F.2d at 1153. Judge Friedman's decision answered that question "No" with respect to historical references to the number of FBI informants reporting on Mafia issues and to the dispensation of operational funds. *Id.* at 83. That information must therefore be released from *all* responsive documents.

Judge Friedman also noted that the FBI had provided no evidence of any attempt to ascertain the life status of the individuals whose information it redacted on privacy grounds. *Id.* at 85. He further ordered the FBI to "supplement its *Vaughn* index with individualized and more detailed descriptions of the information not disclosed" pursuant to Exemption 7(C) "[i]n each instance in which it is not clear that from context that information [so] redacted . . . reveals a name or other basic identifying information," *id.* at 86 (mentioning, for example, pages 404, 418, 703, 744, 924, and 942 of the responsive documents). And he ordered the FBI to "provide evidence from which the Court can deduce something of the nature of the [investigative] techniques" that were redacted pursuant to Exemption 7(E). *Id.* at 88. Reviewing the current *Vaughn* index, the Court notes that the FBI has not said how it determined the life status of individuals named or identified in the sample documents. (That it released the names of certain dead

ORDER-17

individuals does suggest that it made such a determination.)   There is, moreover, no indication that the Bureau applied this method to determine the life status of individuals identified in the non-sample documents.  The FBI has not provided "individualized and more detailed descriptions" of the large portions of text redacted pursuant to Exemption 7(C).  Nor has it provided enough detail for the Court to determine whether the disclosure of information redacted pursuant to Exemption 7(E) "could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E).  The Bureau should address these deficiencies if it renews its motion for summary judgment.

### IV. CONCLUSION

Representative sampling in FOIA cases allows the Court to reach a conclusion about the entire set of responsive documents through a careful examination of a subset of those documents.  Sampling works on the assumption that all documents have been handled in the same way, that the documents in a representative sample "count not simply for themselves, but for presumably similar non-sample documents." *Bonner*, 928 F.2d at 1152.  That assumption has been frustrated here, because the FBI has released certain types of information from the sample documents while withholding it from the rest.  The Court therefore orders the non-sample documents to be reprocessed so that all non-exempt information can be released to Ms. Clemente.

ORDER-18

For the reasons stated above, the FBI's motion for summary judgment is **GRANTED** as to the adequacy of its search for documents and **DENIED** without prejudice as to the remaining issues. Ms. Clemente's cross-motion is **DENIED** without prejudice.

**SO ORDERED** this 13th day of April 2012.

Barbara Jacobs Rothstein
United States District Judge

ORDER-19