**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

ANGELA CLEMENTE,

    **Plaintiff,**

    **v.**

**FEDERAL BUREAU OF**
**INVESTIGATION, et al.,**

    **Defendants.**

Civil Action No. 08-1252 (BJR)

ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS'
SECOND RENEWED MOTION FOR
SUMMARY JUDGMENT

## I.      INTRODUCTION

Angela Clemente brings this suit under the Freedom of Information Act

("FOIA"), 5 U.S.C. § 552, against the Federal Bureau of Investigation, a component of

the U.S. Department of Justice, and other unnamed agencies (collectively, "the FBI").

Before the Court is Defendants' Second Renewed Motion for Summary Judgment [Dkt. No.

105]. For the reasons set forth below, the Court GRANTS in part and DENIES in part the FBI's

motion.[1]

## II.      BACKGROUND

Plaintiff filed this FOIA action against the FBI on July 21, 2008, seeking to obtain an

unredacted copy of the FBI's file on the late Gregory Scarpa, Sr., a high-ranking Mafia member

who served as an FBI informant. *See Clemente v. F.B.I.*, 741 F. Supp. 2d 64, 71 (D.D.C. 2010).

The parties have been through two rounds of cross motions for summary judgment. *See* Dkt.

---

[1]      Plaintiff also seeks relief to file a sur-reply in support of her opposition to Defendants' Second Renewed Motion for Summary Judgment. *See* Dkt. No. 116. The motion is denied because no sur-reply is warranted in this case. *Groobert v. President and Directors of Georgetown College*, 219 F. Supp. 2d 1, 13 (D.D.C. 2002) (citing *American Forest & Paper Ass'n v. United States Envtl. Prot. Agency*, 1996 WL 509601, at *3 (D.D.C. 1996)) (the court may permit the filing of a surreply at its discretion).

Nos. 11, 25-40, 51-52, and 78. After the first round of motions, U.S. District Court Judge Paul L. Friedman, to whom this case was originally assigned, found that the FBI had conducted an adequate search for documents responsive to Plaintiff's FOIA request, but directed the FBI to supplement its *Vaughn* index and further instructed the parties to agree on a representative sample of the documents that were responsive to Plaintiff's FOIA request. Dkt. No. 40. Plaintiff moved for reconsideration of Judge Friedman's order, arguing among other things, that the FBI did not adequately search for documents responsive to her FOIA request. Dkt. No. 43. Judge Friedman denied Plaintiff's motion for reconsideration. Dkt. No. 61.

Thereafter, the parties agreed that the FBI would produce a new *Vaughn* index of a representative sample of approximately 192 pages. Dkt. No. 81 at 8. The FBI reprocessed the sample pages and released further information. *Id*. The matter was then transferred to this U.S. District Court Judge on September 1, 2011. Dkt. No. 65. The parties renewed their cross motions for summary judgment, and on April 23, 2012, this Court once again affirmed that the FBI's search for documents related to Plaintiff's FOIA request was adequate. Dkt. No. 81. However, this Court also ordered that the non-sample documents be reprocessed in light of the fact that the FBI released additional information when it reprocessed the sample documents. *Id*. at 18.

In addition, this Court noted certain deficiencies in the revised *Vaughn* Index. In order to correct these deficiencies, this Court instructed the FBI to: (1) release historical references to the number of FBI informants reporting on Mafia issues and to the dispensation of operations funds; (2) state "how [the FBI] determined the life status of individuals" and apply the method to the non-sample documents; (3) provide "individualized and more detailed descriptions" of the information withheld pursuant to Exemption 7(C); and (4) provide sufficient detail to allow the Court to determine whether the disclosure of information previously redacted pursuant to

Exemption 7(E) could reasonably be expected to enable an individual to evade the law. *Id.* at 17-18. Lastly, this Court denied Plaintiff's renewed cross motion for summary judgment without prejudice. *Id.* at 19.

In response to the April 23, 2012 order, the FBI reprocessed the entire initial release of documents (*i.e.*, all of the FBI documents that were responsive to Plaintiff's FOIA request). Dkt. No. 84 at 1. The FBI asserts that it reviewed 1,153 pages and on August 1, 2012, released 1,153 pages (with redacted portions) to the Plaintiff. Defendants then filed the present motion, arguing that the FBI has released all segregable, non-exempt information responsive to Plaintiff's FOIA request. Plaintiff opposes the motion and it is now ripe for review.

### III.  LEGAL STANDARDS

#### A.  The Freedom of Information Act

FOIA was enacted so that citizens could discover "what their government is up to." *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989). "The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). FOIA therefore "seeks to permit access to official information long shielded unnecessarily from public view and attempts to create a judicially enforceable public right to secure such information from possibly unwilling official hands." *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976) (quoting *EPA v. Mink*, 410 U.S. 73, 80 (1973)). FOIA "is broadly conceived," *Mink*, 410 U.S. at 80, and its "dominant objective" is "disclosure, not secrecy," *U.S. Dep't of Def. v. FLRA*, 510 U.S. 487, 494 (1994) (quoting *Rose*, 425 U.S. at 361).

An agency may withhold information responsive to a FOIA request only if the information falls within an enumerated statutory exemption. 5 U.S.C. § 552(b). These "exemptions are 'explicitly exclusive,'" *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 151 (1989) (quoting *FAA Administrator v. Robertson*, 422 U.S. 255, 262 (1975)), and "have been consistently given a narrow compass," *id*. "The agency bears the burden of justifying any withholding, and the Court reviews the agency claims of exemption de novo." *See Bigwood v. U.S. Agency for Int'l Dev*., 484 F. Supp. 2d 68, 74 (D.D.C. 2007) (citing 5 U.S.C. § 552(a)(4)(B)). Because the focus of FOIA is "information, not documents . . . an agency cannot justify withholding an entire document simply by showing that it contains some exempt material." *Krikorian v. Dep't of State*, 984 F.2d 461, 467 (D.C. Cir. 1993) (citation and internal quotation marks omitted). Instead, FOIA requires that federal agencies provide to a requester all non-exempt information that is "reasonably segregable" from, 5 U.S.C. § 552(b)—that is, not "inextricably intertwined with," *Mead Data Central, Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir.1977) (citations and internal quotation marks omitted)—exempt information.

## B.    Summary Judgment

FOIA cases are typically and appropriately decided on motions for summary judgment. *Miscavige v. IRS*, 2 F.3d 366, 368 (11th Cir. 1993); *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009); *Rushford v. Civiletti*, 485 F. Supp. 477, 481 n.13 (D.D.C. 1980). In a FOIA case, an agency is entitled to summary judgment if it can demonstrate that there are no material facts in dispute as to the adequacy of its search for or production of responsive records. *Nat'l Whistleblower Ctr. v. U.S. Dep't of Health & Human Servs*., 2012 WL 1026725, at *4 (D.D.C. Mar. 28, 2012). An agency must show that any responsive information it has withheld was either exempt from disclosure under one of the exemptions enumerated in 5

U.S.C. § 552(b), or else "inextricably intertwined with" exempt information, *Mead Data*, 566 F.2d at 260 (citations and internal quotation marks omitted). "Because FOIA challenges necessarily involve situations in which one party (the government) has sole access to the relevant information, and that same party bears the burden of justifying its disclosure decisions, the courts . . . require the government to provide as detailed a description as possible—without, of course, disclosing the privileged material itself—of the material it refuses to disclose." *Oglesby v. U.S. Dep't of Army*, 79 F.3d 1172, 1178 (D.C. Cir. 1996). This justification is typically contained in a declaration or affidavit, referred to as a *Vaughn* index after the case of *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973). An agency's affidavits or declarations are presumed to be submitted in good faith. *See SafeCard Servs., Inc. v. S.E.C.*, 926 F.2d 1197, 1200 (D.C. Cir. 1991).

There is no set formula for a *Vaughn* index, because "the critical elements of the *Vaughn* index lie in its function, and not in its form." *Kay v. FCC*, 976 F. Supp. 23, 35 (D.D.C. 1997). The purpose of a *Vaughn* index is "to permit adequate adversary testing of the agency's claimed right to an exemption," *Nat'l Treasury Emps. Union v. U.S.Customs Service*, 802 F.2d 525, 527 (D.C. Cir. 1986) (citing *Mead Data Central*, 566 F.2d at 251), and so the index must contain "an adequate description of the records" and "a plain statement of the exemptions relied upon to withhold each record," *Nat'l Treasury Emps. Union*, *id*. at 527 n.9.

## IV.    ANAYLSIS

The FBI asserts that it has disclosed all responsive, non-exempt information to Ms. Clemente, and that, as such, it is entitled to judgment as a matter of law. Ms. Clemente opposes the motion, arguing that: (A) the FBI's search for documents responsive to her FOIA request was inadequate; (B) the FBI failed to meet its threshold burden of proof under

Exemption 7; and (C) even if the FBI met its threshold burden under Exemption 7, it failed to satisfy its burden under subsections (C), (D), and (E) of Exemption 7. Accordingly, Plaintiff requests that this Court deny the FBI's second renewed summary judgment motion, instruct the FBI to conduct further searches for responsive documents, and permit Plaintiff to conduct discovery. The Court will address each of Plaintiff's arguments below.

### A.    The Adequacy of the FBI's Search for Responsive Documents

Ms. Clemente urges this Court, pursuant to Federal Rule of Civil Procedure 54(b), to reconsider the Court's earlier determination that the FBI's search for documents responsive to Plaintiff's FOIA request was sufficient. As noted earlier in this Order, Plaintiff's arguments regarding the adequacy of the FBI's search have been addressed on three separate occasions— Judge Friedman addressed the arguments twice, this district court judge once. *See* Dkt. Nos. 42, 61, and 81. Each time, the Court affirmed that the FBI's search was adequate because it was "reasonably calculated to uncover all relevant documents." *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990).

Here, Plaintiff raises the same arguments that this Court has thrice addressed and rejected; the Court declines to address those arguments yet again. *Black v. Tomlison*, 235 F.R.D. 532, 533 (D.D.C. 2006) (internal quotations omitted) (stating motions for reconsideration are not simply an opportunity to reargue facts and theories upon which a court has already ruled); *see also*, *Reed v. Islamic Republic of Iran*, 242 F.R.D. 125, 129 (D.D.C. 2007). Accordingly, Plaintiff's Rule 54(b) motion is denied.

### B.    The FBI Has Satisfied Its Threshold Burden of Proof under Exemption 7

As discussed above, under FOIA, the FBI may withhold documents responsive to Ms. Clemente's FOIA request only if the responsive documents fall within one of the enumerated

statutory exemptions. *See* 5 U.S.C. § 522(b). The FBI bears the burden of justifying any

withholding. *Bigwood v. U.S. Agency for Int'l Dev*., 484 F. Supp. 2d 68, 74 (D.D.C. 2007).

During the first round of summary judgment motions before Judge Friedman, David M. Hardy,

Section Chief of the Record/Information Dissemination Section of the FBI's Records

Management Division, submitted a declaration to the Court along with copies of the redacted

documents released to Ms. Clemente, in which he described the various categories of

information withheld as exempt from disclosure. One such category of documents are those that

the FBI asserts are exempt from disclosure pursuant to Exemption 7.

Exemption 7 protects from disclosure "records or information compiled for law

enforcement purposes," but only to the extent that disclosure of such records would cause an

enumerated harm. *See* Dkt. No. 42 at 28 citing 5 U.S.C. § 552(b)(7); *see also Fed. Bureau of

Investigation v. Abramson*, 456 U.S. 615, 622 (1982). In the first round of summary judgment,

Plaintiff argued that the records in question were not compiled for law enforcement purposes, but

rather, demonstrate that Scarpa and his FBI handler, Lindley DeVecchio, aided and abetted in

illegal activities. Dkt. No. 23-1 at 19. The FBI countered that the records were compiled to

"investigate [Scarpa's] involvement in the La Costra Nostra [] criminal enterprise, to collect

evidence and/or information from [Scarpa], and [to] document and monitor the actions of

[Scarpa], pursuant to 18 U.S.C. §§ 1961-1968 (RICO)." Dkt. No. 115-1 Sixth Declaration of

David M. Hardy at ¶ 15.

Judge Friedman rejected Plaintiff's argument. He held that the content of the records is

consistent with the FBI's assertion that they were created for law enforcement purposes. *See* Dkt.

No. 42 at 27. Judge Friedman further held that even if the "Court were to assume that the FBI's

deployment of Scarpa sometimes contravened the law, there is no evidence that the records were

compiled for any purpose other than that supplied by the FBI: documenting the activities of a criminal informant. Such documentation advances the FBI's interest in monitoring the behavior and interactions of an important source of information and so serves a law enforcement purpose." *Id.* at 27-28. Accordingly, Judge Friedman concluded that the FBI had satisfied its threshold burden under Exemption 7. This Court agrees with Judge Friedman's assessment of the records and will not disturb his decision on this issue.

### C.      Whether the FBI Satisfied Its Burden under Exemption 7(C)

Having met its threshold burden under Exemption 7 (*i.e.*, that the records were compiled for law enforcement purposes), the FBI still must establish that the redacted material satisfies one of the subparts of Exemption 7 (*i.e.*, one of the enumerated harms). One of the subparts on which the FBI relies is subsection C, which protects from disclosure information in law enforcement records that "could reasonably be expected to constitute an unwarranted invasion of privacy." 5 U.S.C. § 552(b)(7)(C). The FBI claims that five types of information were properly withheld pursuant to Exemption 7(C): (1) the "names and identifying information of FBI [special agents]. . . and support employees"; (2) the "names of third parties . . . [who] were of investigative interest to the FBI"; (3) the "names of third parties who are merely mentioned in various communications" documented in Mr. Scarpa's file; (4) "the name and identifying information concerning local law enforcement personnel from the New York City Police Department"; and (5) "the names and/or identifying data of individuals who assisted the FBI by providing information within the records responsive to plaintiff's request." 1st Hardy Decl. at ¶¶ 42, 45, 48, 51 and 53.

In the first round of summary judgment, Ms. Clemente objected to the FBI's invocation of Exemption 7(C), arguing that the FBI had not properly balanced the privacy interests at stake

against the public interest in disclosure. She argued that "[t]he public interest in disclosure is overwhelming" because "this is a case which involves violent crimes, including murder, committed by an FBI Top Echelon informant who was on the FBI payroll when he committed these crimes and covered them up, and whose handler was aware of these activities." Dkt. No. 23-1 at 21. Judge Friedman agreed that "the public has a significant interest in learning about any misuse of criminal informants by the FBI," but noted that Plaintiff had failed to "explain how that interest would be advanced by the release of the names and identifying information of all individuals mentioned in Mr. Scarpa's file." Dkt. No. 42 at 31. Nevertheless, Judge Friedman found that the FBI's *Vaughn* index [was] not sufficiently detailed to permit the [P]laintiff to make her case regarding the public interest in disclosure of information withheld under Exemption 7(C)." *Id*. Therefore, Judge Friedman instructed the FBI to provide information as to the efforts it took to ascertain the life status of the individuals whose information it redacted on privacy grounds (noting that one's interest in privacy diminishes after one's death) and to provide individualized and more detailed descriptions of the information withheld pursuant to Exemption 7(C) "[i]n each instance in which it is not clear that from the context that information [so] redacted … reveals a name or other basic indentifying information," (noting specifically pages 404, 418, 703, 744, 924, and 942 of the responsive documents). *Id*. at 32.

Subsequent to Judge Friedman's ruling (and subsequent to further prodding from this district court judge after the parties renewed their cross motions for summary judgment, *see* dkt. nos. 51 and 57), the FBI supplemented its *Vaughn* Index and released further information on the documents that it had previously withheld pursuant to 7(C). According to the FBI, whenever it determined that an individual was deceased, the name and/or identifying information that had been previously redacted was released. On the other hand, when the FBI was unable to find

evidence of the individual's life status, it presumed that the individual is alive and continued to withhold the information pursuant to (7)(C). *See* Sixth Hardy Decl., ¶ 18. In addition, if the FBI had date of birth information for an individual and that information showed that the individual was born more than 100 years ago, the FBI presumed that the individual was dead and released his or her information (the so called "100-year-rule").

Therefore, the dispute regarding the FBI's invocation of Exemption 7(C) has been dwindled down to this: (1) did the FBI sufficiently attempt to ascertain the life status of the individuals whose information has not been released, and if so, (2) does the privacy interest of said individuals outweigh the public interest in disclosure, and (3) did the FBI disclose all nonexempt, segregable information on Documents 404, 418, 703, 744, 924, and 942. The Court will address each question in turn.

### 1. The FBI's Efforts to Ascertain the Life Status of the Individuals Identified in the Responsive Documents

As Judge Friedman previously stated, it is well-settled law that an individual's death diminishes, but does not eliminate, her privacy interest in the nondisclosure of any information about her that appears in law enforcement records. *See Campbell v. U.S. Dep't of Justice*, 164 F.3d at 33-34; *Davis v. Dep't of Justice*, 460 F.3d 92, 98 (D.C. Cir. 2006). Consequently, in balancing an individual's privacy interests against any public interest in disclosure, an agency must typically take "the fact of death . . .into account." *Davis*, 460 F.3d at 98. The agency can only do that if it first "ma[k]e[s] a reasonable effort to ascertain life status." *Id*.

Here, the FBI asserts that it took the following steps to ascertain the current life status of any individual whose name and/or other identifying information was identified in the records responsive to Plaintiff's FOIA request:

a.	For individuals whose names were not connected to an identifiable date of birth and/or social security number, defendant conducted a search of the FBI's Automated Case Support System ("ACS") in an attempt to locate this personally identifying information. In cases where defendant was unable to locate an identifiable date of birth and/or social security number, the FBI withheld the names under Exemptions 6 and 7(C) because it was unable to determine the individuals' life status; and, therefore, those individuals were presumed to be living;

b.	For individuals' names whose date of birth was available, defendant used the date of birth to apply the judicially-recognized "100-year-rule," *i.e.*, if the individual was born more than 100 years ago, defendant presumed that the individual is dead and released the name;

c.	The FBI conducted a search using an external database called Consolidated Lead Evaluation and Reporting ("CLEAR") in order to determine life status of individuals for whom the FBI had a date of birth and/or social security number, but did not fit the 100-year rule. CLEAR is a subscription-based investigative platform designed for and utilized by numerous law enforcement and government entities, along with other professionals, who need to obtain information about people and companies;

d.	When a date of birth and/or social security number was provided and CLEAR was unable to provide a life status, defendant conducted a Google search to see if it could obtain an obituary; and

e.	For FBI Special Agents and/or support employees, defendant utilized institutional knowledge gained from prior FOIA requests or internal records to determine the individuals' life status.

Dkt. No. 105-1 Fifth Hardy Decl. at ¶ 6.

The D.C. Circuit has instructed that "[a] court balancing public interests in disclosure against privacy interests must ... make a reasonable effort to account for the death of a person on whose behalf the FBI invokes exemption 7(C)." *Schrecker v. United States Dep't. of Justice*, 349 F.3d 657, 662 (citing *Campbell v. United States Dep't of Justice*, 164 F.3d 20, 33 (D.C. Cir. 1988). "In undertaking the review required by *Campbell*, a court must assure itself that the Government has made a reasonable effort to ascertain life status. And the Government's efforts must be assessed in light of the accessibility of the relevant information." *Id.*; *see also Truitt*, 897 F.2d at 542 ("The adequacy of an agency's search is measured by a 'standard of reasonableness,'

and is 'dependent upon the circumstances of the case.'" (footnote and citation omitted)). The

D.C. Circuit has cautioned, however, that it would be inappropriate for a court to mandate "a

bright-line set of steps for an agency to take in this situation. FOIA, requiring as it does both

systemic and case-specific exercises of discretion and administrative judgment and expertise, is

hardly an area in which the courts should attempt to micro manage the executive branch."

*Johnson v. Executive Office for United States Attorneys*, 310 F.3d 771, 776 (D.C. Cir. 2002).

Here, Plaintiff contends that the FBI's methods for determining the life status of the

individuals are inadequate. Plaintiff's criticism of the FBI's methods are numerous, but her main

objection is that former FBI Assistant Director John P. Mohr's name does not appear in the

records. Plaintiff is convinced that Assistant Director Mohr "played a critical role" in the

Bureau's handling of Scarpa, and given that the Assistant Director Mohr was born in 1910, his

name should have been disclosed under the FBI's "100-year-rule." In Plaintiff's view, because

Assistant Director Mohr's name was not disclosed in the records, "no credence can be placed in

the FBI's assertions" that the individuals whose names remain "redact[ed] are alive." *Id*. at 25.

Plaintiff's argument is soundly undercut by the FBI's sworn testimony that Assistant

Director Mohr's name is not included in the redacted information. *See* Dkt. No. 115-1 at ¶ 19

Hardy's Sixth Decl. (stating that out of "an abundance of caution, and to ensure processing

accuracy, the FBI [] conducted a further review of all [of the] processed records released to

Plaintiff to address Plaintiff's specific concern regarding the alleged redaction of the names John

P. Mohr and Cartha DeLoach[2]. These two names are not redacted in the processed records.").

Unless this Court disregards the FBI's sworn testimony, something that this Court is not

prepared to do, it must assume that Assistant Director Mohr's name is not included in the

---

[2]     Plaintiff also suggests that the FBI withheld the name of Cartha "Deke" DeLoach, a former FBI employee.
Dkt. No. 112 at 31.

records. Accordingly, the Court finds that this particular criticism of the FBI's effort to ascertain the life status of the individuals identified in the records is unfounded.

However, Plaintiff also objects to the manner in which the FBI searched its Automated Case Support System ("ACS") to locate identifiable dates of birth and/or social security numbers for those individuals for whom such information is not contained in the responsive documents. She notes that the FBI "does not state whether [it] used aliases or logical buildups and breakdowns of the name in conducting this search." Dkt. No. 112 at 25. She also charges that the FBI "does not indicate whether the search of the ACS employed the Electronic Case File ("ECF")," something that Plaintiff alleges "would presumably be far more effective in determining life status." *Id.* Plaintiff also points out that the FBI does "not mention using the Social Security Death Index ("SSDI")," an index that she claims "is most likely to be effective in determining whether someone has died." *Id.* at 26. Lastly, Plaintiff objects to the manner in which the FBI conducted its search on the Consolidated Lead Evaluation and Reporting ("CLEAR") database and Google. *Id.*

The FBI fails to address these remaining objections in any manner whatsoever. Without input from the Government, this Court is unable to ascertain the validity of Plaintiff's concerns, nor determine, as a matter of law, that the FBI "has made a reasonable effort to account for the death of a person on whose behalf the FBI invokes exemption 7(C)." *Schrecker*, 349 F.3d at 662 (quoting *Campbell*, 164 F.3d at 33). Accordingly, the FBI is instructed to supplement its *Vaughn* Index to address these concerns.

## 2. Disclosure of Identifying Information

The D.C. Circuit has long recognized that "the mention of an individual's name in a law enforcement file will engender comment and speculation and carries a stigmatizing connotation."

*Schrecker*, 349 F.3d at 666 (quoting *Fitzgibbon v. Cent. Intelligence Agency*, 911 F.2d 755, 767 (D.C. Cir. 1990)). "Therefore, persons involved in law enforcement investigations—witnesses, informants, and the investigating agents—'have a substantial interest in seeing that their participation remains secret.'" *Id.* (quoting *Senate of the Commonwealth of Puerto Rico*, 823 F.2d at 588). Accordingly, this Court finds that the individuals whose identifying information is redacted from the documents that are responsive to Plaintiff's FOIA request have a substantial interest in keeping their information private. However, as noted above, the FBI must address Plaintiff's concerns regarding its attempt to ascertain the life status of these individuals. While this Court finds that these individuals have a substantial privacy interest here, such an interest may be diminished if the individuals are deceased. *Campbell*, 164 F.3d at 33-34; *Summers v. Dep't of Justice*, 140 F.3d 1077, 1084-85 (D.C. Cir. 1998) (Silberman, J., concurring). The Court is unable to appropriately balance the privacy interest at stake against the public interest in disclosure until this Court knows the life status of the affected individuals.

### 3. Documents 404, 418, 703, 744, 924, and 942

With respect to the FBI's invocation of Exemption 7(C), Judge Freidman also instructed the FBI to provide "individualized and more detailed descriptions" of the large portions of text that had been redacted in responsive Document 404, 418, 703, 744, 924, and 942 pursuant to Exemption 7(C). This Court again instructed the FBI to provide such information when it failed to so in response to Judge Friedman's order. The FBI finally responded, releasing some additional material from five of the six cited pages, and releasing all of the information on the sixth page (Document 942). The Court will address the parties' arguments with respect to each of the five documents on which the FBI continues to withhold information pursuant to Exemption 7(C):

### a.    Document 404

The FBI avers that it re-processed this document and "released much of the information previously withheld." Fifth Hardy Decl. at ¶ 8(a). It claims that the only remaining redactions "relate to the names of third parties who are still living and continue to maintain a privacy interest." *Id*. Plaintiff argues that the remaining redacted information must be released because the FBI has not met its threshold burden of establishing that the material was compiled for law enforcement purposes. The Court has already rejected this argument and will not address it again here. *See* Section IV. B. above. Plaintiff also argues that the withheld information appears to already be available to the public as it involves the arrest of three men who made public appearances in a legal proceeding. Therefore, Plaintiff argues, there is no basis for a privacy interest. Plaintiff misses the point of redacting this information. The redaction was not made to protect the fact that these individuals were arrested and later appeared in court, the redaction was made to protect the privacy interest of third parties who have some sort of relationship with the FBI. It is the fact of this relationship that is being protected. Accordingly, this Court finds that the third parties whose information is redacted from Document 404 have a substantial interest in keeping the information private. However, as noted above, the FBI must address Plaintiff's concerns regarding its attempt to ascertain the life status of these individuals. While this Court finds that these individuals have a substantial privacy interest here, such an interest may be diminished if the individuals are deceased. *Campbell*, 164 F.3d at 33-34.

### b.    Document 418

The FBI claims that the only information that remains redacted on this document is the "names of an FBI support employee and a third party who are still living and continue to maintain a privacy interest." Fifth Hardy Decl. at ¶ 8(b). The Plaintiff does not object to the

FBI's redaction of the "third party's" identifying information in this document. *See* Dkt. No. 112 at 28. Therefore, this redaction will remain in effect. However, Plaintiff does challenge the redaction of the identifying information associated with the FBI employee, arguing that as a FBI employee, s/he has a diminished privacy expectation. Given the facts of this particular FOIA request—namely that Plaintiff implicates FBI agents in wrongdoing and that the document in question dates back to 1965—this Court finds that the public's interest in disclosure outweighs the FBI agent's privacy interest. The FBI shall disclose this information.

### c. Document 703

The FBI continues to withhold all of the information on this document pursuant to Exemption 7(C), claiming that "it relates to a particular individual that may have been cooperating with the authorities and thus retains a significant privacy interest." Fifth Hardy Decl. at ¶ 8(c). Plaintiff counters that the FBI's "may have been" assertion establishes that its basis for invoking Exemption 7(C) is "sheer speculation." Dkt. No. 112 at 29. In addition, Plaintiff complains that the FBI redacted "five or six lines in the penultimate paragraph of this document." *Id*. According to Plaintiff, "[c]learly, this amount of material includes more than just a name and basic identifying information, yet the FBI has failed to provide any description of the nature of the withheld material." *Id*. Plaintiff's concerns regarding the FBI's redaction on this document are valid and, once again, the FBI has failed to address her arguments. Accordingly, the FBI is instructed to supplement its *Vaughn* Index to address Plaintiff's arguments.

### d. Document 744

The FBI continues to withhold all of the information it previously redacted on this document, stating "it relates to a relationship in which the third party who is being protected was involved. Additionally, there is personally-identifying information about the other person

involved in the relationship. Further segregation of this material cannot reasonably be accomplished without triggering an unwarranted invasion of privacy." Fifth Hardy Decl. at ¶ 8(d). The Court finds the FBI's claim unpersuasive. The sentence preceding the large block of redaction states: "Informant advised on 1/7/71, regarding _____ the following story:" The following redacted section, where presumably the story is related, takes up nearly two-thirds of the page, suggesting that the redacted section contains more information than simply names and other identifying information. The FBI does not address Plaintiff's contention that further non-exempt information can be segregated from the protected information. Accordingly, the Court instructs the FBI to re-examine Document 744 to determine whether more information may be disclosed, and if it determines that further information may not be disclosed without revealing identifying information, explain why that is the case. In addition, given that the events of the story took place sometime before at least January 1971, suggesting that the individuals involved in the story may be dead, the FBI is further instructed to confirm the life status of the individual(s) who are the subject of the story in accordance with the Court's instructions set forth above.

### e. Document 924

The FBI continues to withhold all of the previously withheld information contained on Document 924, claiming that "it relates to the job information of the individual who is being protected." Fifth Hardy Decl. at ¶ 8(f). Plaintiff counters that there are few "jobs" that are so unique that the job cannot be described without revealing a particular person connected to it. The Court disagrees with Plaintiff. In this context, where the information relates to individuals who are associated with the Mafia, disclosing the job could very well reveal the identity of the

individual. Therefore, the Court finds that the FBI has satisfied its burden under Exemption 7(C) and the information shall remain redacted.

### D. The FBI Has Satisfied Its Burden of Proof under Exemption 7(D)

Next, the FBI avers that it is entitled to withhold certain information pursuant to subsection D of Exemption 7. Exemption 7(D) protects from disclosure records or information compiled for law enforcement purposes:

> that could reasonably be expected to disclose the identity of a confidential source . . . [who] furnished information on a confidential basis, and, in the case of a record or information compiled by a criminal law enforcement authority in the course of a criminal investigation. . . , information furnished by a confidential source.

5 U.S.C. § 552(b)(7)(D). A confidential source may be an individual, such as a private citizen or paid informant, or it may be a state, local, or foreign law enforcement agency. *Zavala v. Drug Enforcement Admin.*, 667 F. Supp. 2d 85, 101 (D.D.C. 2009); *Lesar*, 636 F.2d at 491. There is no presumption that a source is confidential for purposes of Exemption 7(D) solely because the source provides information to a law enforcement agency in the course of a criminal investigation. *See U.S. Dep't of Justice v. Landano*, 508 U.S. 165, 181 (1993). Rather, a source's confidentiality is determined on a case-by-case basis. *Id*. at 179-80. "A source is confidential within the meaning of 7(D) if the source provided information under an express assurance of confidentiality or in circumstances from which such an assurance could reasonably be inferred." *Williams v. FBI*, 69 F.3d 1155, 1159 (D.C. Cir. 1995) (citing *Landano*, 508 U.S. at 170-74).

The FBI withheld the following categories of information pursuant to Exemption 7(D): (1) the symbol numbers of confidential sources; (2) the file numbers of confidential sources; (3) "information provided by source symbol numbered informants"; and (4) the "names and

information of third parties who were interviewed . . . under an implied grant of confidentiality." 1st Hardy Decl. at ¶¶ 56, 57, 60 and 63. Ms. Clemente argues that the FBI has failed to demonstrate that the sources in question provided information under an express or implied grant of confidentiality, as required by *Landano*.

Plaintiff raised this identical argument in the parties' first round of summary judgment, and Judge Friedman soundly rejected it: "As to 'source symbol numbered informants,' Mr. Hardy explains in his declaration that it is the FBI's practice to assign source symbols to informants only if those individuals 'report information to the FBI on a regular basis pursuant to an 'express' grant of confidentiality.' This averment is sufficient to demonstrate that those informants qualify as 'confidential source[s]' within the meaning of the FOIA." Dkt. No. 42 at 33 (citing *Amuso v. U.S. Dep't of Justice*, 600 F. Supp. 2d 78, 99 (D.D.C. 2009) (informants assigned a source code operate under an express grant of confidentiality and so are protected by Exemption 7(D)). Judge Friedman further held:

> Informants to whom no source code was assigned but who supplied information to the FBI regarding the Mafia are also protected confidential sources. "[W]hatever his relation to the crime [about which he provides information], an informant is at risk" — and hence, entitled to an implied grant of confidentiality — "to the extent the criminal enterprise he exposes is of a type inclined toward violent retaliation." It is difficult to conceive of a "criminal enterprise" known to be more "inclined toward violent retaliation" than the Mafia. Individuals who provide information on the Mafia to the FBI therefore are to be considered confidential sources. Ms. Clemente objects that the FBI has not demonstrated that the sources in question here were reporting on any particular "'crime' . . . which would warrant an implied promise of confidentiality." But the Mafia is an organization formed for the purpose of coordinating and committing crimes. Any information furnished to the FBI about the organization could aid in the detection and prosecution of crime — and lead to retaliation against the informant. Given the nature of the criminal enterprise in question, there is no need for the FBI to identify specific crimes about which particular informants reported.

*Id.* at 34 (internal citations omitted). This Court agrees with Judge Friedman's sound analysis and will not disturb it. Accordingly, the FBI is entitled, pursuant to Exemption 7(D), to withhold information provided by "source symbol numbered informants" and the names and information of third parties who were interviewed under an implied grant of confidentiality.[3]

### E. The FBI Met Its Burden under Exemption 7(E)

Exemption 7(E) protects from disclosure records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E); *see Long v. United States Dep't of Justice*, 450 F. Supp. 2d 42, 79 (D.D.C. 2006). The FBI cited this exemption in withholding two categories of information: (1) information describing "techniques and procedures used in law enforcement investigations regarding the handling of confidential informants," and (2) "the number of current informants reporting on [Mafia] issues" and other "logistical details of an FBI undercover operation." 1st Hardy Decl. at ¶¶ 66 and 68.

In rejecting the FBI's first motion for summary judgment on this issue, Judge Friedman held that the FBI's *Vaughn* Index was too "vaguely worded" to justify withholding information describing "law enforcement techniques" and "logistical details" of FBI undercover operations. Dkt. No. 42 at 35. Rather, he ruled, the FBI "must provide evidence from which the Court can

---

[3]      The FBI also withheld the symbol and file numbers of confidential sources pursuant to Exemption 7(D). However, Judge Friedman ruled that such information was properly withheld pursuant to Exemption 2, something Plaintiff does not challenge. *See* Dkt. No. 42 at 33. Therefore, this Court does not need to address whether this information is protected by Exemption 7(D).

deduce something of the nature of the techniques in question," *id*, before the Court could conclude that "such disclosures could reasonably be expected to risk circumvention of the law," 5 U.S.C. § 552(b)(7)(E). This district court judge noted similar inadequacies in the FBI's update *Vaughn* Index when the Bureau renewed its motion for summary judgment, noting that the FBI still had not "provided enough detail for the Court to determine whether the disclosure of the information redacted pursuant to Exemption 7(E) could reasonably be expected to enable an individual to evade the law. Dkt. No. 81 at 18 (quoting 5 U.S.C. § 552(b)(7)(E)).

In his fifth declaration, Mr. Hardy finally provides further information. Dkt. No. 105 at ¶ 11. He states that the nature of the confidential informant and undercover operation information that the FBI is withholding pursuant to Exemption 7(E) includes:

> (i) detailed discussions of an interrogation technique to a source while in a public setting to avoid suspicion and to provoke certain reactions and/or actions from targets; (ii) discussions of pre- and post-informant meeting arrangements; discussions of techniques dealing with the planning and logistical details involved in setting up these meetings to ensure the source and all parties involved had adequate security and to avoid suspicion; (iii) certain techniques employed by agents when communicating with informants to prevent suspicion and detection of informants; (iv) use of specific equipment in surveillance and undercover operations and the way it was employed to disguise the surveillance; (v) instructions given to an informant as to a specific course of action in order to provoke certain reactions from targets; (vi) and specific investigative techniques used to conceal devices used in the investigation to gather information.

*Id*. at ¶ 11. The FBI avers that "[r]eleasing the details of these specific law enforcement techniques and procedures in the context of these records will provide criminals with a vivid picture of the context and circumstances in which a specific technique is employed, what actions and/or circumstances would trigger the use of specific techniques, the reasoning behind the use of the techniques, and specific information about the implementation of the techniques." *Id*. The

FBI further asserts that disclosure of this information may "aid individuals in circumventing the law by promoting the invention and implementation of countermeasures, development of methods to more effectively cover their criminal activities thus avoiding detection, adjustment of behavior to mislead investigations, concealment of evidence, and prevention of future infiltration of informants into criminal organizations….disclosure…[could] divert FBI investigative methods from intended targets, severely hamper the ability to effectively investigate and prosecute criminals, and endanger the life and/or physical integrity of informants." *Id*.

In order for the FBI to successfully invoke the "techniques and procedures" prong of 7(E), it must demonstrate that its withholdings meet three basic requirements. *American Immigration Council v. U.S. Dep't of Homeland Sec*., 950 F. Supp. 2d 221, 245 (D.D.C. 2013). First, the FBI must show that the documents were in fact "compiled for law enforcement purposes" and not for some other reason. *Id*. Second, it must show that the records contain law-enforcement techniques and procedures that are "generally unknown to the public." *Id*. (quoting *Nat'l Whistleblower Ctr. v. Dep't of Health & Human Servs*., 849 F.Supp.2d 13, 36 (D.D.C.2012)). Finally, the FBI must show that disclosure "could reasonably be expected to risk circumvention of the law." *Id*. This Court has already determined that documents were compiled for law enforcement purposes. *See* Section IV. B. above. Therefore, the Court will turn to the two remaining requirements.

Plaintiff argues that the FBI is unable to satisfy the remaining two requirements because, in her view, not only are the techniques and procedures described in the documents publicly known, they are outdated. *See* Dkt. No. 112 at 41 ("The technology of wiretaps and 3x5 audio tapes is gone…typewriters once used to conceal a recording device…are gone…the Mafia [members] who intersected with Scarpa are largely dead or retired[, and] [t]he buildings and

meeting locations which existed then may no longer exist now or only in an altered state due to wear and tear, damage or destruction by hurricanes, etc.").

The FBI counters that: "the techniques employed by confidential informants and their handlers [during the time that Scarpa was an FBI informant] are still effectively used by informants and their handlers in current investigations." *Id*. Although the FBI does not directly state that the techniques are not publicly known, the Court infers that they are not, otherwise the techniques could not be "effectively used" by the FBI in "current investigations." This is sufficient to satisfy the FBI's burden of proof under Exemption 7(E). *See*, *e.g*., *American Immigration Council*, 950 F. Supp. 2d at 247 ("The Court is not expecting such full disclosures as to defeat the purpose of the [7(E)] exemption," but the government must at least provide "an explanation of why the technique or procedure is not generally known to the public."). Accordingly, the FBI's redactions were appropriate.

## IV.    CONCLUSION

Based on the foregoing, the Court HEREBY rules as follows:

1.    Defendants' Second Renewed Motion for Summary Judgment [Dkt. No. 105] is GRANTED in part and DENIED in part:

      a.    The FBI's search for documents responsive to Plaintiff's FOIA request was adequate. This issue is not to be raised again by Plaintiff in this Court;

      b.    The FBI satisfied its threshold burden under Exemption 7 of establishing that the documents responsive to Plaintiff's FOIA request were compiled for law enforcement purposes. This issue is not to be raised again by Plaintiff in this Court;

c.     The FBI is instructed to supplement its *Vaughn* Index to address the arguments raised by Plaintiff regarding the adequacy of its attempt to ascertain the life status of the individuals who are identified in the responsive documents;

d.     The FBI shall supplement its *Vaughn* Index regarding the life status of the individual(s) addressed on Document No. 404;

e.     The FBI shall release the information redacted on Document No. 418;

f.     The FBI is instructed to supplement its *Vaughn* Index regarding the life status of the individual(s) whose identifying information is contained on Document Nos. 703 and 744. In addition, the FBI shall address the arguments raised by Plaintiff with regard to these two documents. Any failure to address Plaintiff's arguments will be deemed a waiver and the Court will order that the information be released;

g.     The FBI has satisfied its burden under Exemption 7(C) with respect to Document No. 924. The information shall remain redacted;

h.     The FBI has satisfied its burden under Exemption 7(D) and it entitled to withhold the information redacted pursuant to that exemption. Plaintiff shall not raise this issue again in this Court;

i.     The FBI has satisfied its burden under Exemption 7(E) and is entitled to withhold the information redacted pursuant to that exemption;

j.     The FBI shall file its supplemented *Vaughn* Index within thirty (30) days of the date of this order; and

2. It is FURTHER ORDERED that Plaintiff's motion for leave to file a sur-reply [Dkt. No. 116] is DENIED. In addition, Plaintiff's request to conduct discovery is DENIED.

Dated this 18th day of 2014.

Barbara Jacobs Rothstein
U.S. District Court Judge